No. 48.—Rowland Stubbs, and others, plaintiffs in error, *vs.* The Central Bank of Georgia, defendant.

[1.] The record in the cause should contain in itself, without references *aliunde*, all the papers, exhibits, depositions, and other proceedings, which were given in evidence in the Court below, and which are necessary to the hearing in this Court; and wanting these, the writ of error will be dismissed, and the judgment below affirmed.

[2.] The decision of the Court, overruling objections to evidence, cannot be assigned for error, unless it appears that the evidence was in fact given to the Jury.

[3.] If the admission of improper evidence is assigned for error, the substance of it must be set out; if it was not material, the rejection of it is not ground of reversal.

[4.] The party who challenges the legality of the opinion of an inferior tribu-

Stubbs *vs.* Central Bank.

nal, must prove the error by the record.   The Court below is presumed to have decided correctly, until the contrary is shown.

[5.]  The rule of Court requires that a brief of the oral, and a copy of the written evidence, shall be " *embodied in*" the bill of exceptions.   It is not regular, therefore, to *annex it to* the bill of exceptions, and refer to it as an exhibit; particularly, unless the identical document or paper receive the authoritative stamp of the presiding Judge. ˙

[6.]  The Act organizing the Supreme Court, requires that the bill of exceptions should be true and consistent with what transpired in the cause.   To comply with the Statute, it should contain the *whole* truth, or at least so much thereof as is necessary to a proper hearing of the cause in error.   And if it is defective in this respect, the presiding Judge will be justified in refusing to certify and sign it.

Motion to dismiss the writ of error.

The bill of exceptions in this cause simply stated that the defendants excepted to the several decisions of the Court, as follows:

1st.  Because the Court erred in deciding that commissions to take interrogatories might issue in blank in regard to the names of the commissioners.

2d.  Because the Court erred in refusing to allow the defendants to prove the improper and corrupt conduct of one of the commissioners who acted in taking interrogatories for plaintiff, not offered in evidence, in order to discredit and reject other interrogatories read to the Jury, taken by the same commissioner.

3d.  Because the Court erred in refusing to allow defendants to show the interference of Philip P. Bethea, the payee of the note sued on, with certain witnesses whose testimony was not offered to be read on the trial, for the purpose of affecting the plaintiff's rights, from and after the time T. J. Warthen testified that he became possessed of said note.

The 4th and 5th exceptions were for the refusal of the Judge to admit evidence of the sayings of Philip P. Bethea, after the note went out of his possession, and without stating what those sayings were.

6th.  Because the Court erred in deciding that the Central Bank had the right to release T. J. Warthen, the indorser on the note of P. P. Bethea, and *that this release* did not affect the competency or credibility of Warthen, as a witness.

On the 28th March, 1849, this bill of exceptions was " allowed" by Judge *Hill*, as " *part* of the proceedings" in the case.

There was no statement in the bill of exceptions, of the nature of the action, the cause of action, the defence or the issues; nor any brief or statement of the evidence in the cause, or any part of it.

Notice of the signing of this bill of exceptions was given on the 2d April, 1849, and the papers filed in office on the 6th April, 1849. On the 11th April, 1849, a brief of the testimony was examined and allowed by Judge *Hill*, and on the same day filed in the Clerk's office.

The defendant in error now moved to dismiss the writ of error, because—

1st. The bill of exceptions does not embrace the material facts upon which the judgment of the Court below was rendered, and is too vague and uncertain to enable this Court to review the decisions of the Court below.

2d. Because the certificate of the presiding Judge to the bill of exceptions is insufficient.

Ezzard, for the motion.

Tidwell, contra.

*By the Court.*—Lumpkin, J. delivering the opinion.

[1.] A preliminary motion is submitted in this case, which if well founded, must dispose of the writ of error. It is, that the bill of exceptions does not embrace the material facts upon which the judgment of the Court below was rendered, and that it is too vague and uncertain to enable this Court to review the decision of the Court below, and determine upon it understandingly. It contains no statement of the nature of the action, the defence set up, nor any brief of the oral, or copy of the written evidence adduced on the trial, or any portion thereof.

The Court below is presumed to decide correctly until the reverse is shown; and to make it error to admit or exclude testimony, the bill of exceptions must show its relevancy and materiality, and the injury done to the party complaining by the decision thereon. Tested by these rules, we find this record fatally

defective.    Take, for example, the first error complained of, i. e.
that the Court held, that commissions to take interrogatories
might issue in blank, in regard to the names of the commissioners.
Conceding, for the sake of the objection, that the opinion was
wrong, still it does not appear that any such interrogatories were
read on the trial.

[2.] And the decision of the Court, overruling objections to
evidence, cannot be assigned for error, unless it appear that the
evidence was, in fact, given to the Jury.    *Thomas vs. Tanner,* 6
*Monr.* 52.

Again, it is alleged that the Court erred in refusing to allow the
defendants to prove the improper and corrupt conduct of one of
the commissioners who acted in taking interrogatories for the
plaintiff, not offered in evidence, in order to discredit and reject
other interrogatories read to the Jury, and taken by the same
commissioner.

The difficulty here is, that the record does not disclose what the
evidence was, which is charged to have been thus illegally admit-
ted.    And where a witness is asked an improper question, and
the objection to it being overruled, it is answered, and the record
does not show what the answer is, and that it is prejudicial to the
objector, the judgment will not be reversed.    *King vs. Mimms,*
7 *Dana,* 26.

[3.] If the admission of improper evidence is assigned for error,
the substance of it must be set out, for if it was not material, the
rejection is not ground of reversal.    *Farriday vs. Selser,* 4 *How.
Miss.* 506.    *Shortz vs. Unangst,* 3 *Serg. & Watts,* 45.    The ad-
mission of illegal testimony to a point upon which no evidence is
necessary, is not error.    *Foster vs. Nowlin,* 4 *Missouri R.* 18.    The
overruling of an objection to a leading question, put by the plain-
tiff to one of his witnesses, cannot be assigned for error, unless
the record show that the defendant was injured by the answer of
the witness.    *Culbertson vs. Stanley,* 6 *Blackf.* 67.

These authorities, as well as the reason of the thing, show, con-
clusively, the necessity of stating, in the bill of exceptions, the
substance of the testimony which is alleged to have been impro-
perly allowed, in order that the appellate Court may decide intel-
ligibly in the matter or thing complained of.

[4.] There are other grounds in the bill of exceptions, to all of
which one general observation is applicable, to wit: that the

points intended to be raised for revision, are not set out with suffi-
cient fulness and certainty to enable this Court to decide, without
danger of mistake, the exceptions reserved.   All of them but the
6th and last, relate to the acts and sayings of P. P. Bethea, one
of the former owners of the note in controversy ; but what those
sayings were, or where made, is not stated.   The inference from
the record is, that they were after the paper went out of his pos-
session ; and if so, of course they were properly excluded, and,
*prima facie*, the judgment of the Court below is right.   At any
rate, there is not enough before us to justify us in saying that it
was wrong ; and we are not at liberty to conjecture that there
may have been contradictory proof as to whether or not Bethea
was in possession of the note at the time when these acts and dec-
larations took place.   We can indulge in no presumption against
the regularity of the proceedings below.   The party who chal-
lenges the legality of the proceedings of inferior tribunals, must
prove the error by the record.

As to the 6th exception, that the Court erred in maintaining
that the Central Bank of Georgia had the right to release Thom-
as J. Warthen, who was second indorser of P. P. Bethea, on the
note discounted in said bank, from all liability on said paper, and
that said discharge did not affect the competency or credibility of
the testimony of the witness, the same remarks apply which were
made to the *second exception*.   It does not appear what the testi-
mony of this witness was—whether it was material or other-
wise—whether it was prejudicial to the defendant or not.

We have assumed, throughout this opinion, that the testimony
appended to the record constituted no part of the bill of excep-
tions, and consequently is not before us.   The bill of exceptions
was certified and signed on the 28th of March, 1849.   Notice was
given thereof, as required by the Act, on the 2d of April ensu-
ing ; and on the 11th of April, the papers were filed in the Clerk's
office, and on the same day, a brief of the testimony was exam-
ined and allowed by the Judge, and also filed in office.   The op-
posite party had no notice of the testimony, which was annexed
nine days after notice was served of the signing of the bill of ex-
ceptions.   Of course it must be rejected.

[5.] And I would take occasion to remark, that a practice is
growing up, of attaching the testimony to the bill of exceptions,
with reference thereto as exhibits ; whereas, the rule requires

Stubbs *vs.* Central Bank.

that it shall be "*embodied in*" the bill of exceptions. And seeing the liability to abuse, which a departure may occasion, this regulation will be strictly enforced. Certainly every part and parcel of the bill of exceptions should receive the *imprimatur* or authoritative stamp of the presiding Judge.

[6.] Again, it is rather irregular to certify, as in this case, that the bill of exceptions tendered, is examined and allowed as "a part of the proceedings." The bill of exceptions should not only contain the truth as far as they go, but they should state the *whole* truth, which is necessary to a full and proper understanding of the cause; and without this, the presiding Judge would be justified in refusing to certify and sign them, as true and consistent with what has transpired in the cause before him. We are compelled to hear and determine causes upon matters contained in the record, and not otherwise; and the responsibility is devolved, therefore, by the law, upon the presiding Judge, to see to it that the record is complete. For whenever it appears from the bill of exceptions, that deeds, records, papers or other testimony, written or oral, material to a sufficient understanding of the case, were given in evidence in the Court below, and these documents, or this verbal proof, are not incorporated into and made a part of the bill of exceptions, and duly certified and signed as such, within the time prescribed by the Statute, this Court will affirm the judgment. *Barton vs. Wells,* 5 *Whart.* 225.

If parties, then, have an interest to correct any errors in the judgments of the Circuit Courts, they can place themselves in a condition to have them examined, by pursuing the course we have indicated; but there being nothing in this transcript to warrant the writ of error, as it now is, and as it cannot be amended or supplied, the writ of error must be dismissed.