1. Where there is a conflict between the recitals in a bill of exceptions and the record, the record must prevail.
(a) A party who challenges the legality of an opinion of an inferior tribunal must prove the error by the record. The court below is presumed to have decided correctly until the contrary is shown.
(b) Where an order of the trial court appointing a receiver is based upon pleadings and evidence, the case falls within the rule that this court will not control such discretion unless it is manifestly abused.
2. A court of equity has concurrent jurisdiction with the court of ordinary over the administration of estates, but will not interfere with the regular administration of estates except upon application of the representative, either, first, for construction and direction; second, for marshalling the assets; or except upon the application of any person interested in the estate where there is danger of loss or other injury to his interest; and to authorize such interference, the facts should clearly show that there is good reason for so doing. Under all the facts and circumstances of the instant case, it can not be said as a matter of law that the judge, by the appointment of a receiver, abused the discretion vested in him.
 No. 15614. NOVEMBER 14, 1946. REHEARING DENIED DECEMBER 2, 1946.
George Mr. Saliba II, a minor, by next friend, brought a suit against Mrs. Adele George Saliba, individually and as personal *Page 682 
representative of the estate of George M. Saliba I, and against Mrs. Camilla Saliba Shibley, individually and as administratrix, with the will annexed, of the estate of John Rogers Saliba and as guardian for her minor children, to wit, Atlas George Shibley Jr., Josephine Shibley, Evelyn Shibley, and Geneva Shibley. By his petition as amended he alleged: The first-named defendant resided in Terrell County, Georgia, and the other defendant and her children resided in the State of Arkansas. Mrs. Adele George Saliba is the widow and sole heir at law of George M. Saliba I. John Rogers Saliba, the father of the plaintiff, died November 4, 1944, leaving surviving him his widow, Mrs. Mary Sheffield Saliba, and the plaintiff, who was born November 1, 1944. John Rogers Saliba executed his last will and testament on May 15, 1943. A copy of the will was attached to the petition. The will gave $1000 to Mrs. Mary Sheffield Saliba, wife of John Rogers Saliba and mother of the plaintiff; and the balance of the estate, amounting to about $124,000, to George M. Saliba I and Mrs. Camilla Saliba Shibley, for and during their natural lives, with remainder to the children of Mrs. Camilla Saliba Shibley. The will was probated in solemn from on January 1, 1945, and George M. Saliba I qualified as executor. The petition filed by George M. Saliba I to probate the will showed on its face that the will had been revoked by the birth of the plaintiff on November 1, 1944, since the will had been executed May 15, 1943, and the testator died November 4, 1944. (The will contained no provision in contemplation of the plaintiff's birth.) A copy of the petition to probate was attached. Two days after the death of the plaintiff's father, he and his mother were carried to the home of George M. Saliba I, where his mother was kept under constant watch by George M. Saliba I and members of his family. About December 1, 1944, George M. Saliba I went in the room of the plaintiff's mother and advised her that her husband had left a will, which had been made under an agreement with him; and that she and the plaintiff had been taken care of and she need not worry about the will. He stated that he would look after everything and would treat her and the plaintiff as he had always treated his brother. The mother, knowing that her husband had perfect confidence in George M. Saliba I, trusted him and paid no attention to the probate proceedings. On December 8, 1944, an attorney for *Page 683 
George M. Saliba I brought to the mother for her signature a paper, which she did not read, nor was it read to her, but the attorney represented it to be one connected with the probate of the will of her husband, and it was signed by her without any knowledge of its contents and without knowing its legal effect. Neither George M. Saliba I nor his attorney advised the mother that the will had been revoked by the birth of the plaintiff, and for that reason could not legally be probated. A copy of the paper signed by her was attached to the petition, and by it she acknowledged service of the probate proceeding, agreed to serve as guardian ad litem for the plaintiff, acknowledged service for him, and consented that the will of his father might be probated in solemn form. His mother at the time she signed the paper had not seen the will of her husband and had no knowledge of its contents. She was an inexperienced person, unacquainted with business and law. The order for service in the probate proceeding provided: "and personal acknowledgement, in writing, of service thereof by Mary Sheffield Saliba shall be deemed sufficient in lieu of personal service." His mother did not represent him in the probate proceeding and he was not otherwise represented. She — being inexperienced and lacking in appreciation of the importance of the proceeding to herself and the plaintiff, and relying on the assurances by George M. Saliba I and his attorney that the will provided for her and the plaintiff and that they would be taken care of — did not contest in any way the probate of the will in solemn form. George M. Saliba I, at the time the will was probated, represented to the ordinary that it was the desire of all interested parties that the will be probated, and that it was being done by agreement and consent; but neither George M. Saliba I nor his attorney advised the ordinary that the will had been revoked by the birth of the plaintiff. George M. Saliba had been advised by his attorney that the birth of the plaintiff revoked by law the will of John Rogers Saliba; and with this knowledge and the fiduciary relation which he had with the plaintiff and his mother, it was a fraud both on the ordinary and on the plaintiff to withhold this information from the ordinary when the will was offered for probate. It was the duty of both George M. Saliba and his attorney to disclose to the ordinary that the will had been revoked by the birth of the plaintiff, and their failure to do so rendered the judgment of probate *Page 684 
null and void, and constituted a legal fraud. The mother was never legally served as guardian ad litem for the plaintiff, and had no right to waive service for him and consent as such guardian for a judgment to be rendered contrary to his interest. If the judgment of probate was not absolutely void, it was voidable and should be set aside for the reasons stated. The birth of the plaintiff and the death some four days later of his father had a serious effect on the nervous and physical condition of his mother and rendered her physically unfit to appreciate the importance of the probate proceedings, and she did not know of the contents of her husband's will until several months after it had been probated. On being apprised of its contents, she employed counsel and filed a petition, in her own behalf and as next friend of the plaintiff, to vacate and set aside the judgment of probate. In that petition she set up substantially the allegations herein made, and in addition alleged that the propounder practiced a fraud on the jurisdiction of the Court of Ordinary of Terrell County by alleging that the testator was a resident of that county at the time of his death, when as a matter of fact he was a resident of a different county. While this proceeding was pending and after a demurrer had been interposed to the petition, George M. Saliba I agreed with the plaintiff's mother that, if she would consent for the demurrer to be sustained, he would agree that she have a year's support out of the estate on condition that she and the plaintiff would have no further interest in the estate of his father. Pursuant to this agreement, the appraisers set apart $25,000 from the estate of his father to his mother and the plaintiff as a year's support. The court was not advised of the contents of the agreement, did not approve it, and signed an order dismissing the suit on the statement that it was being done by consent. The petition had stated a cause of action and was not subject to demurrer. At the time this was done, the plaintiff was about thirteen months of age, and the consent by his mother that an order be granted sustaining the demurrer is not binding on him, because: "(a) there was no consideration for said order; (b) said order, being by consent, could not in law affect the rights of petitioner, who was 13 months and 5 days old at the time the same was entered; (c) the consent order is an attempt to give validity to the will of John Rogers Saliba, which George M. Saliba I knew, at the time said order was consented *Page 685 
to, had been revoked and could not be probated as the will of John Rogers Saliba; (d) said consent order, sustaining the demurrer and dismissing the petition, is void, in that it is an attempt to waive petitioner's right to challenge the validity of the will of his father and to have the proceedings probating said will set aside as being null and void, George M. Saliba I knowing that said will had been revoked and that the proceedings probating same were illegal and void; (e) the consent order was antagonistic to the rights and interest of petitioner; and (f) said consent order was an attempt to foreclose and sacrifice petitioner's rights in his father's estate." Had the trial judge been apprised of the conditions on which the case was being dismissed, he would not have signed the order sustaining the demurrer. The agreement between his mother and George M. Saliba I for the dismissal of the case by sustaining the demurrer interposed was collusive and constituted a fraud on the plaintiff insofar as his interest in his father's estate is concerned, and by such act his mother was grossly negligent and guilty of gross laches. George M. Saliba I and Camilla Saliba Shibley, without authority of law, while assuming to act as representative of the estate of John Rogers Saliba, took charge of certain personalty belonging to the estate and converted the same to their own use at a time when the estate had no representative, and therefore Mrs. Camilla Saliba Shibley and the estate of George M. Saliba I are liable for twice the value of the personalty so converted. There had been an attempt to dispose illegally of the plaintiff's interest in his father's estate. The plaintiff was without any adequate remedy at law.
Besides for process, he prayed: (a) That the judgment of probate be vacated and set aside. (b) That it be decreed that John Rogers Saliba, the plaintiff's father, died intestate. (c) That it be decreed that the plaintiff is entitled to one-half of his father's estate. (d) That the order sustaining the demurrer to the petition filed by Mrs. Mary Sheffield Saliba in her own behalf and as next friend of the plaintiff against George M. Saliba I be vacated and set aside. (e) That a receiver be appointed to take charge of the estate of John Rogers Saliba. (f) That the defendant, Mrs. Camilla Saliba Shibley, be required to render an accounting for all property belonging to the estate, which she then had or which she had disposed of. (g) That the defendant, Mrs. *Page 686 
Adele George Saliba, individually and as representative of the estate of George M. Saliba I, be required to render an accounting for all property belonging to the estate of John Rogers Saliba which she then had or which she or George M. Saliba I had disposed of. (h) That the defendants be required to account for all rents and income received belonging to the estate. (i) That the defendants be restrained and enjoined from disposing of the property of the estate or changing the status thereof. (j) For judgment, and for general relief.
The court, on presentation of the petition, granted an order naming Mrs. Camilla Saliba Shibley guardian ad litem for her minor children, set a date for hearing, granted a restraining order, and provided for service.
The defendants, both in their individual and representative capacity, filed a joint response. In it they consented that an interlocutory injunction be granted, but denied that there was any reason why a receiver should be appointed. In further response, they said: On the death of John Rogers Saliba, his brother, George M. Saliba I qualified as executor of his estate, but gave no bond since the will relieved him from doing so. He received, belonging to the estate, certain real property in Dawson, Georgia. He also received money and other securities amounting to $26,704.32, out of which he paid the debts due by the deceased, but for lack of information the defendants were unable to give the items paid and to whom. They knew that the brother had paid funeral expenses amounting to approximately $3000. They did not know what amount, if any, of this sum George M. Saliba I had on hand at the time of the testator's death, which occurred during March, 1946. On the death of George M. Saliba I, his sister, Mrs. Shibley, was appointed administratrix de bonis non cum testamento annexo; and she qualified by taking the usual oath and giving bond in the sum of $40,000. During the time George M. Saliba I served as executor, he received all of the rents from the property owned by the estate, and also from certain property owned individually by Mrs. Shibley. The defendants were unable to determine just what amount, if any, George M. Saliba I was due the estate from the personal property received by him. The respondent, Mrs. Adele George Saliba, as the sole heir and representative of the estate of George M. Saliba, in order to make *Page 687 
a full and complete settlement of all claims which Mrs. Camilla Saliba Shibley had against the estate of George M. Saliba, conveyed to Mrs. Shibley the individual interest of George M. Saliba in certain real estate in Dawson, Georgia; and Mrs. Saliba now has no property of any kind in her possession belonging to the estate of John Rogers Saliba. All of the estate of John Rogers Saliba is now represented by real estate, located in Dawson, Georgia, in good repairs, amply covered by insurance, rented to responsible tenants, and yielding a monthly rental of $213.75, which she has at all times deposited in the Bank of Terrell, in Dawson, Georgia, and which amount, less what she, as such administratrix, has had to spend as necessary expenses, is now on deposit in said bank, and she expects to continue to deposit such funds in the bank of Terrell. Mrs. Shibley said that she has no desire to dispose of any of the property until the outcome of the case; and that both defendants are solvent and able to respond to any judgment which the plaintiff might recover. He has not recovered any judgment, and unless he does so, all of the expense of receivership would have to be borne by the respondents. As an evidence of her good faith, and to avoid unnecessary expenses of receivership, and in addition to her bond as representative of the estate, which was of full force and effect, Mrs. Shibley offered to give an indemnity bond in any amount fixed by the court, to protect fully the interest of the plaintiff. The defendants prayed that a receivership be denied.
After considering the pleadings and evidence introduced, the court appointed a permanent receiver, to which order the defendants excepted.
1. The only question now for decision is whether or not the court erred in appointing a receiver. Counsel by their briefs disagree as to whether the court heard evidence in support of the allegations of the petition. The bill of exceptions recites that the plaintiff in the court below introduced no evidence in support of his application. The order naming a receiver, which is a part of the record, recites: "The application for a receiver in the above *Page 688 
matter coming on to be heard this the 20th day of July, 1946, after considering the application, answer thereto, the evidence adduced in the trial of the probation of said will, and additional evidence and argument of counsel." In Crews v.Ransom, 183 Ga. 179 (3) (188 S.E. 1), this court said: "When there is a conflict between the recitals in a bill of exceptions and the record, the record must prevail." Neither the recitals contained in the bill of exceptions nor the record show the evidence adduced in the trial of the probate proceedings of the will of John Rogers Saliba or what the "additional evidence" was. There is, we think, a conflict between the recitals contained in the bill of exceptions and the record, and the latter must prevail. The burden is on him who alleges error to show it affirmatively by the record. Loveless v. McCollum, 185 Ga. 751
(196 S.E. 428). In Stubbs v. Central Bank of Georgia,7 Ga. 258, this court held: "The party who challenges the legality of the opinion of an inferior tribunal must prove the error by the record. The court below is presumed to have decided correctly, until the contrary is shown." It is the duty of a plaintiff in error to see that the whole record is before the Supreme Court, and imperfections in the record, resulting from his failure in this particular, will be construed against him.Easley v. Camp, 40 Ga. 698; Howe Machine Co. v. Souder,58 Ga. 64. The plaintiff in error having failed to bring to this court the evidence upon which the lower court acted, it will be presumed that the same supported the allegations in the application for a receiver. Therefore, since the order appointing a receiver was based upon the pleadings and evidence, the case falls within the rule that this court will not control the trial court's discretion unless it was manifestly abused. See Astin
v. Carden, 194 Ga. 758, 764 (22 S.E.2d 481).
2. A court of equity has concurrent jurisdiction with the court of ordinary over the administration of estates, Code, § 113-2203, but will not interfere with the regular administration of estates except upon application of the representative, either, first, for construction and direction; second, for marshalling the assets; or except upon the application of any person interested in the estate when there is danger of loss or other injury to his interest. Code, § 37-403. Mayo v. Keaton,54 Ga. 496. "To authorize such interference the facts must very clearly show there is a good reason *Page 689 
for so doing." Butler v. Floyd, 184 Ga. 447
(191 S.E. 460), and the cases there cited. This is an application, by one alleging himself to be an heir at law of an estate, against the administratrix do bonis non cum testamento annexo for the appointment of a receiver and for other equitable relief. In view of the pleadings, which we have fully set out in the statement of facts, and the presumption that the evidence submitted upon the hearing supported the application, the judge, mindful of the provisions embodied in the Code sections above cited, did not, under all of the circumstances disclosed by the record, abuse his discretion in appointing a receiver and granting an interlocutory injunction.
Judgment affirmed. All the Justices concur.